UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DONALD COLEMAN,                    )
                                   )
        Petitioner,                )
                                   )
    vs.                            )        Case No. 1:22-CV-10 JSD
                                   )
TERRI VANDERGRIFF,  Warden of      )
the Farmington Correctional Center, )
                                   )
                                   )
        Respondent.                )
                                   )
                                   )
                                   )

**MEMORANDUM AND ORDER**

This matter is before the Court on Donald Coleman's ("Coleman" or "Petitioner") petition for a writ of habeas corpus under 28 U.S.C. § 2254 by a person in state custody (ECF No. 1) and Amended Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus (ECF No. 27). Respondent Terri Vandergriff ("Respondent") (ECF No. 39).[1] Coleman filed a traverse (ECF No. 45). For the reasons set forth below, the petitions for a writ of habeas corpus are denied.

I.     **BACKGROUND**

In 2015, Coleman was convicted by a jury of twenty-two felony counts, including robbery in the first degree, burglary in the first degree, attempted forcible sodomy, six counts of kidnapping, four counts of endangering a child in the first degree, and nine counts of armed criminal action. "Each of the counts stem from a home invasion in which two armed men entered the home of C.F., confined C.F.'s children and disabled mother to a bedroom, subjected C.F. to

---

[1] Terri Vandergriff, Warden of the Farmington Correctional Center, is substituted as the Respondent in this action pursuant to Fed. R. Civ. P. 25(d).

sexual abuse, and stole a prepaid debit card." *State v. Coleman*, 502 S.W.3d 688 (Mo. Ct. App. 2016). The trial court sentenced Coleman to term-of-years sentences, totaling twenty years' imprisonment.

The Missouri Court of Appeals provided a factual history of the case:

C.F., a twenty-three-year-old female, lived with her two children and her disabled mother. C.F. knew her neighbors well. Kenya Daily ("Daily") was one of C.F.'s neighbors and has two children similar in age to C.F.'s children. C.F. considered Daily a friend. C.F. knew some of Daily's family and friends, including Coleman, who was Daily's stepbrother. Coleman was sometimes at Daily's house while C.F. was visiting.

On March 9, 2013, C.F. received her tax refund on a prepaid debit card. C.F. told her aunt, her uncle, and Daily about the prepaid debit card—no one else. The next night, while C.F. was home with her children, her mother, and her two cousins (both toddlers), Daily sent C.F. a series of text messages and eventually walked to C.F.'s apartment to borrow a cigarette. C.F. noticed that Daily kept looking out the window and texting on her phone, which C.F. thought was odd. As Daily was leaving C.F.'s apartment, C.F. told her son to lock the front door.

C.F. heard her son begin to scream, and she ran toward the front door of her home, where she encountered two men, both wearing masks and holding guns. Both men were African-American, with their hair in dreadlocks. One man wore a black hoodie, jeans, and tennis shoes; the other man wore lime green and gray Adidas jogging pants and a black hoodie. C.F. recognized the man in the black hoodie and jeans as Coleman and the other man as Jamond Carter ("Carter"), who was also her neighbor.

The two men ordered C.F. to "[s]hut them kids up." The two men searched the home, Carter found C.F.'s purse and demanded that she hand over the debit card. C.F. gave Carter the debit card and the PIN number. Carter left with the debit card, but returned sometime later because C.F. had given him the wrong card. Carter left again after C.F. gave him the prepaid card containing her tax refund.

While Carter was gone from the home, Coleman remained. C.F.'s mother and the four children were in a room upstairs, while Coleman and C.F. waited downstairs. Coleman forced C.F. to remove her clothes, and he bent C.F. over the kitchen table while touching her with his gun. Coleman put on a condom and rubbed his penis against C.F.'s "butt." C.F. pleaded with Coleman to stop and warned him that police would get his DNA. Coleman stopped without penetrating C.F. and allowed her to put her clothes back on.

When Carter returned, the men took C.F.'s phone and left. C.F. went to the window and saw the men driving away in a red, four-door Cavalier, which she recognized as Carter's girlfriend's car. C.F. used her next-door neighbor's phone to call police. The ordeal lasted about two and a half or three hours.

Police responded to the scene and investigated. Surveillance video from an ATM located near the home showed Carter withdrawing money from C.F.'s account. Officers also found a handgun and the back of a cell phone in the alley behind C.F.'s home. The gun belonged to Corey Prince.

The State charged Coleman with twenty-two criminal counts, including one count of first-degree robbery, nine counts of armed criminal action, one count of first-degree burglary, one count of attempted forcible sodomy, six counts of kidnapping, and four counts of first-degree endangering the welfare of a child.

At trial, Prince testified that he owned the gun that was found at the scene. Prince testified that he kept the gun in the trunk of his car, and that the gun had been stolen when the trunk's lock had been punched open the same day as the attack on C.F. Prince had reported the theft. Immediately after this testimony, the State asked, "And do you know someone named Duckie[?]"[2] Defense counsel objected to this question, arguing, "there has been no evidence or testimony that [Prince] ever saw [Coleman] with his gun, never saw him handle his gun. So I feel that this testimony is irrelevant and prejudicial." The State countered, "It's circumstantial evidence that the night that he knows the defendant—that the gun that was used in the commission of a crime was stolen from somebody who knows the defendant. I think it's relevant circumstantial evidence." Skeptical of the State's rationale, the trial court stated, "I'm not sure how logically relevant it is. I'm going to allow you to ask him if he knows the defendant, and that's going to be it." Prince proceeded to testify that he knew Coleman personally.

Coleman testified and presented several additional witnesses in his defense. Coleman insisted that he was not involved in the crime and that he was at someone else's home at the time. Three witnesses corroborated Coleman's alibi, testifying that Coleman was with them at the time of the crime. Coleman also called Carter, his alleged co-conspirator, in his defense.

Carter testified that Coleman did not participate in the crime. However, Carter—who had previously pled guilty to the crime—acknowledged that the sworn testimony he gave at his plea hearing named Coleman as his co-conspirator.

The jury convicted Coleman on each of the twenty-two counts. After denying Coleman's motion for new trial, the trial court sentenced Coleman to a total of twenty years in prison.

---

[2] Coleman's nickname was "Duckie."

(ECF No. 10-5 at 2-5)

Coleman is currently incarcerated at the Farmington Correctional Center. Respondent Terri Vandergriff, Superintendent of the Farmington Correctional Center, is Coleman's custodian and the proper respondent. 28 U.S.C. § 2254.

In his amended habeas petition, Coleman raises three grounds for relief:

1) Trial counsel was ineffective for failing to move for dismissal on the grounds that the charging instrument was deficient under state rules. (ECF No. 27 at 8)

2) Coleman's due process rights were violated because of alleged deficiencies in the charging instrument. (ECF No. 27 at 16)

3) Coleman's due process rights were violated when the trial court admitted testimony from Corey Prince that Prince knew Coleman and that a handgun found behind C.F.'s house had been stolen from Prince's car hours before the charged crimes. (ECF No. 27 at 18)

As discussed herein, Claims 1 and 2 are procedurally defaulted, barring them from federal habeas review. While Claim 3 seems to be preserved for federal habeas review, the Court gives deference to the Missouri Court of Appeals' decision on this issue and denies federal habeas relief. *See* 28 U.S.C. § 2254(d).

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a [s]tate court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

4

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-91 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). To be sure, if a claim could have been raised earlier but was not, that claim is procedurally

defaulted. *See* 28 U.S.C. §2254(e)(2)[3]; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Martinez v. Ryan*, 566 U.S. 1 (2012) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim."). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.    DISCUSSION

### A.    Procedural Default

To expand further, under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. "A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn*, 596 U.S. at 371; *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (citing *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011)) ("A procedural default occurs when a prisoner violates a state procedural rule and this violation serves as an independent and adequate state-law basis to uphold the state courts' dismissal of a claim, thereby precluding consideration of federal claims on direct appeal."). When the prisoner has failed

---

[3] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. §2254(e)(2).

to do so, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted." *Shinn*, 596 U.S. at 371. "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Franklin*, 879 F.3d at 311.

As stated, Respondent argues that only Colemans's Claim 3 was properly preserved for federal habeas review. This Court agrees.

### B.    Claim One

In Claim One, Coleman argues that trial counsel was ineffective for failing to move for dismissal because the charging instrument was deficient under state rules. (ECF No. 27 at 8). That is, Coleman argues that his counsel was ineffective for failing to seek dismissal as to Counts V and VI[4] based upon a fatally defective indictment as to Count V, the felony of forcible sodomy, because the charging document did not contain the conduct that Coleman was alleged to have committed. *Id*. Coleman's Rule 29.15 motion raised two claims for relief. (ECF No. 39-2, Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing, Resp. Ex. M, pp. 30-32) Coleman's Claim One, however, was not included in the amended post-conviction motion so Coleman waived that claim.

Specifically, Count V charged:

> The defendant, Donald Coleman, in violation of RSMo. 566.030, committed the offense of attempted forcible sodomy, punishable upon conviction under RSMo. 566.060, and subject to lifetime supervision upon conviction under RSMo. 217.735, in that on or about March 11, 2013, in the City of St. Louis, State

---

[4] Count VI charged: The defendant, Donald Coleman, in violation of Section 571.015, RSMo, committed the felony of armed criminal action, punishable upon conviction under Section 571.015.1, RSMo, in that on or about March 11, 2013, in the City of St. Louis, State of Missouri, the defendant committed the felony of Attempted Forcible Sodomy charged in Count 5, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of Attempted Forcible Sodomy by, with and through, the knowing use of, assistance and aid of a deadly weapon. (ECF No. 10-1 at 24)

of Missouri, the defendant for the purpose of arousing or gratifying his sexual desire, and such conduct was a substantial step towards the commission of the crime of forcible sodomy of C.F., and was done for the purpose of committing such forcible sodomy.

(ECF No. 10-1 at 24)

At Mr. Coleman's trial, Instruction No. 9 was submitted to the jury on Count V. The instruction read:

> As to Count V, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about March 11, 2013, in the City of St. Louis, State of Missouri, the defendant ordered C.F. to remove her clothing and touched her buttocks with his body, while displaying what appeared to be a deadly weapon, and
>
> Second, that such conduct was a substantial step toward the commission of the offense of the forcible sodomy of C.F., and
>
> Third, that the defendant engaged in such conduct for the purpose of committing such forcible sodomy,
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> A person commits the crime of forcible sodomy when he knowingly has deviate sexual intercourse with a person by the use of forcible compulsion.
>
> As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or terrorizing C.F.
>
> As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of forcible sodomy.

(ECF No. 10-1 at 97-98). Trial counsel did not object to this instruction. (ECF No. 10-2 at 513-24) Coleman asserts that a "reasonably competent attorney in similar circumstances would have sought to dismiss Counts V and VI on the basis that Count V did not contain the conduct in which

Mr. Coleman allegedly committed to be guilty of attempted forcible sodomy, instead it merely charged him with attempted forcible sodomy." (ECF No. 27 at 10) Coleman argues that his trial counsel's deficient performance resulted in him being convicted for attempted forcible sodomy and armed criminal action. (ECF No. 27 at 10) Coleman contends that reasonably competent attorney in similar circumstances would have challenged the indictment as to Count V as being fatally defective because it did not inform him of the nature of the accusation or protect him from double jeopardy if he had been convicted, in violation of the Fourteenth Amendment and Mo. S. Ct. R. 23.01(b), 23.11 (ECF No. 27 at 11-13) Coleman argues that the indictment does not state what "conduct" Coleman is accused of performing, "leaving him to speculate as to what conduct the state intended to use against him to convict him of forcible sodomy." (ECF No. 27 at 13) Coleman contends the indictment is defected because it does not allege any conduct at all but "essentially only alleges that Mr. Coleman did commit forcible sodomy." *Id*. That is, "the indictment language omits the criminal act, that Mr. Coleman was accused of putting on a condom and rubbing his penis against the 'butt' of C.F. while holding a gun to her back." (ECF No. 27 at 13)

Further, Coleman claims he suffered prejudice because of trial counsel's deficient performance. Coleman claims, without a citation to any case, that "[b]ut for trial counsel's failure to seek dismissal of Counts V and VI, there is a reasonable probability that the outcome of the trial would have been different." (ECF No. 27 at 14) Indeed, he claims that Counts V and VI would have been dismissed. *Id.*

Coleman acknowledges that this claim was not properly raised in state court but maintains that failure was due to the ineffective assistance of post-conviction counsel. (ECF No. 27 at 14-15). Coleman argues that was sufficient to overcome this procedural default under either *Martinez*

*v. Ryan*, 566 U.S. 1 (2002) or a gateway claim for actual innocence. Coleman provided the affidavit of co-defendant Jamond Carter with his amended habeas petition. *See* ECF No. 27-1. Carter testified at Coleman's trial that Coleman was not with Carter during the robbery but did not identify his accomplice. (ECF No. 10-2 at 471-488) Carter, however also testified when he pleaded guilty that Coleman was with him during the home invasion. *Id.*  In this new affidavit Carter names his accomplice as Dorrance Harvey, who had purchased weapon used in the crime from a person in the neighborhood. *Id.* Carter further avers that it was mere coincidence that Coleman knew Prince. *Id.* Coleman asserts that the affidavit constitutes "new evidence that was not presented at trial" and "makes it more likely than not that no reasonable juror would find Mr. Coleman guilty beyond a reasonable doubt." (ECF No. 27 at 15)

This Court holds that Claim One failed to preserve this argument under state procedural rules so this claim is defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (citing 28 U.S.C. § 2254(b); *Engle v. Isaac,* 456 U.S. 107, 125–126, n. 28 (1982)) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Further, the Court finds that Coleman cannot find relief under the *Martinez v. Rya*n, 566 U.S. 1 (2012) exception to the exhaustion requirement. Under *Martinez*, Coleman was required to show post-conviction counsel was ineffective under the standards  established in *Strickland*. *Martinez*, 566 U.S. at 12-13. Coleman has not done this. *See Deck v. Jennings*, 978 F.3d 578, 584 (8th Cir. 2020) (quoting *Davila v. Davis*, 582 U.S. 521, 533 (2017) ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."). Likewise, Coleman is limited to the evidence developed in state court and cannot present new evidence either to support the merits of the claim or to establish procedural default. *See Shinn*

*v. Ramirez*, 596 U.S. 366, 371 (2022) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) ("In all but these extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'"). Thus, the Court holds that Coleman cannot show any basis for review under *Martinez* for his procedural default.

Likewise, the Court finds no basis for review under the gateway innocence exception. Under the actual innocence exception, a showing of actual innocence enables habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo,* 513 U.S. 298 (1995); *House v. Bell,* 547 U.S. 518 (2006); *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court of the United States has cautioned, "however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup,* 513 U.S. at 329); *see House,* 547 U.S., at 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). "To obtain review of an otherwise procedurally barred claim, a petitioner must satisfy a two-part test: (1) the 'allegations of constitutional error must be supported with new reliable evidence not available at trial'; and (2) 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (citing *Amrine v. Bowersox,* 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup,* 513 U.S. at 327–28)). Coleman has met neither prong of this test.

In support of his actual innocence claim, Coleman offers only the Jamond Carter affidavit, which is mired in controversy and inconsistencies. In the affidavit, Carter claims that Dorance Harvey, not Coleman, assisted him during the March 10-11, 2013 home invasion. However, the

11

affidavit cannot constitute new evidence because this information was not new or reliable. First, the information is not new because Carter testified at Coleman's trial that Coleman was not his accomplice in the home invasion. Carter pleaded guilty six days before Coleman's trial and stated under oath at this plea hearing that he committed the charged crimes with Coleman. (ECF No. 10-2 at 476-79) Conversely, at Coleman's trial, Carter testified that Coleman was not with him when he committed the home invasion. (ECF No. 10-2 at 472).   However, upon cross-examination, Carter admitted that he "lie[s] when it's convenient[.]" (ECF No. 10-2 at 480) The jury chose not to believe Carter and convicted Coleman. Now, Carter provides the name of his supposed accomplice, Dorance Havery, without any pedigree or identifying information. Carter provides no explanation for why he did not provide this same information at Coleman's trial. *See State v. Manley*, 414 S.W.3d 561, 566 (Mo. Ct. App. 2013) (quoting *State v. Magee*, 911 S.W.2d 307, 312–13 (Mo. App. W.D.1995) (citing *State v. Hamilton*, 732 S.W.2d 553, 556 n. 3 (Mo. App. E.D.1987))("Testimony from a co-defendant who, after trial, is willing to exonerate the defendant 'has an inherent lack of credibility' because '[a]t the time that the co-defendant signifies his willingness to testify, he has been convicted and thus cannot be harmed by testifying untruthfully about the alleged innocence of the defendant seeking a new trial.'"). The Court holds that this belated and vague affidavit is insufficient to demonstrate actual innocence. The Court finds the timing of both Carter's changed testimony at Coleman's trial and now in his vague affidavit to be insufficient to make a threshold showing of gateway innocence. In sum, the Court holds that Coleman's Claim One is procedurally barred and is not subject to an exception under *Martinez* or gateway innocence.

Moreover, even if this Court performed a merits review of Claim One, Coleman would still not be entitled to federal habeas relief. Coleman has not demonstrated that his counsel was

ineffective for failing to object to Count V of the indictment or that he was prejudiced. Respondent acknowledges that "the State inadvertently failed to include language describing the specific conduct that constituted forcible sodomy." (ECF No. 39 at 20). In contrast, the corresponding verdict-director included the conduct that constituted the forcible sodomy, *i.e.*, "the defendant ordered C.F. to remove her clothing and touched her buttocks with his body[.]" While acknowledging this technical error in the indictment, the Court holds that it had no effect on the proceedings because Coleman always was aware of basis for Count V. Specifically, Coleman waived formal reading the charges against him and defense counsel informed the trial court that Coleman "[was] fully aware of the substance of the charge[s] against him." (ECF No. 10-1 at 35) Coleman's counsel also deposed the victim, C.F., before trial and consequently would have been aware of the factual basis for Count V. (ECF No. 10-2 at 316 (defense counsel referencing C.F.'s pretrial deposition)). Further, Coleman's counsel did not object at any time during the trial, particularly during questioning related to the acts that constituted the sodomy, regarding relevance or any confusion as to the charges. *See* ECF No. 10-2 at 309 (C.F. testified that Coleman rubbed his penis on her buttocks). Most notably, Coleman's counsel did not object during the jury instruction conference regarding the instruction for Count V, indicating that Coleman and his counsel clearly understood the basis for the charge and subsequent verdict director. Thus, the Court finds that the record clearly demonstrates that Coleman was aware and not prejudiced by the technical deficiencies in the indictment.

Moreover, Coleman has not shown that the failure to object to the indictment constituted deficient performance by his trial counsel. The Court presumes that trial counsel's decision not to object was reasonable trial strategy and Coleman has failed to rebut this presumption. *Strickland v. Washington*, 466 U.S. 668, 689–90 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101

(1955))("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). Given the lack of counsel's testimony on this topic, the Court must conclude that the decision to not challenge the indictment was an act of reasonable trial strategy. *See Strickland*, 466 U.S. at 689–90 (internal citation omitted) ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). Contrary to Coleman's unsupported claim that Count V would have been dismissed if his counsel had identified the technical deficiency in the indictment, Missouri Supreme Court Rules allow for correction of such a technical deficiency, as long as there is no prejudice to the defendant. *See* Mo. S. Ct. R. 23.08 ("Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if: (a) No additional or different offense is charged, and (b) A defendant's substantial rights are not thereby prejudiced."). The Court has already discerned that Coleman was not prejudiced because his counsel conducted discovery related to the forcible sodomy charge. Likewise, the sufficiency of the indictment would not have deprived the Missouri trial court of jurisdiction. *See State v. Parkhurst*, 845 S.W.2d 31, 34–35 (Mo. 1992)("Subject matter jurisdiction of the circuit court and the sufficiency of the information or indictment are two distinct concepts."). Consequently, the Court does not find that trial counsel acted unreasonably in failing to object to the indictment.

Thus, even if this Court were to determine Count One on the merits, the Court holds that Coleman has not demonstrated in Claim One that the state court decision was contrary to, or

involved an unreasonable application of federal law in *Strickland* and the Court denies federal habeas relief.

### C. Claim Two

In Claim Two, Coleman claims he was denied his right to due process of law, to be free from double jeopardy and to only be tried for the charged offenses under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because his conviction for attempted forcible sodomy and the related armed criminal action charge was based on a fatally defective indictment as to Count V. (ECF No. 27 at 16) As previously discussed, Coleman claims that the indictment was defective as to Count V because the charge did not contain the conduct he was alleged to have committed, notably the indictment does not include any conduct that would constitute the substantial step that he took to attempt to commit the crime but only alleges that Coleman committed attempted forcible sodomy. (ECF No. 27 at 17)

Coleman admits that this ground for relief is procedurally defaulted because it was not raised on direct appeal or postconviction appeal because it was not included in his amended postconviction appeal. (ECF No. 27 at 17) However, Coleman claims that he has overcome the procedural default based upon *Martinez* and gateway innocence for the same reasons as previously outlined in Claim One. (ECF No. 27 at 17)

Claim Two is procedurally defaulted because Coleman did not raise this ground in state court. Here, Coleman failed to object to the inadequacy of the indictment as to Count V on the grounds that his due process rights were violated. "To properly preserve an issue for an appeal, a timely objection must be made during trial." *State v. Cooper,* 336 S.W.3d 212, 214 (Mo. Ct. App. 2011) (citing *State v. Mayes,* 63 S.W.3d 615, 628 (Mo. banc 2001)). The objection at trial must be specific, and on appeal, the same grounds must be relied upon. *State v. Rasheed,* 340 S.W.3d 280,

15

287 (Mo. Ct. App. 2011); *State v. Moore,* 303 S.W.3d 515, 522–23 (Mo. banc 2010). "To preserve constitutional claims or errors for appellate review, they must be raised at the first opportunity with citations to specific constitutional sections." *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. 2012) (citing *State v. Minner,* 311 S.W.3d 313, 319 (Mo. Ct. App. 2010) (citing *State v. Chambers,* 891 S.W.2d 93, 103–04 (Mo. banc 1994)). As Coleman did not timely raise this claim, it is defaulted.

Further, Coleman's due process claim is not eligible for relief from his procedural default under *Martinez*. *See Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (declining to extend *Martinez* to claims alleging ineffective assistance of counsel on direct appeal). Even though he claims that his attorney caused this procedural default by providing constitutionally ineffective assistance, *Martinez* does not excuse this procedural default because Coleman did not raise his ineffective assistance of counsel claim in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (internal citation omitted) ("The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by 'letting the time run' so that state remedies were no longer available."). The Court holds that Coleman's Claim 2 falls outside the narrow exception in *Martinez* and dismisses this claim as procedurally defaulted.

Moreover, even if the Court could apply the *Martinez* analysis, the Court holds that Claim 2 would not warrant review under *Martinez* for the same reasons discussed with respect to Claim 1. Namely, Coleman could not establish prejudice based upon his counsel's failure to include Claim 2. Furthermore, the Court holds that there is no basis for review of Coleman's Claim 2 under the gateway innocence exception. As discussed with respect to Claim 1, Coleman's Claim 2 does not present new or reliable information to support his claim of innocence.

Notably, even if this Court were to review the merits of Claim Two, the Court also would find no basis for federal habeas relief. In Claim Two, Coleman contends that his due process rights

were violated based upon the faulty indictment. However, "[d]ue process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient." *Hulstine v. Morris*, 819 F.2d 861, 864 (8th Cir. 1987) (citing *Franklin v. White,* 803 F.2d 416, 417 (8th Cir. 1986)). As detailed herein, Coleman and his counsel understood the nature of and factual basis for the sodomy charges against him. Coleman and his counsel never asked for clarification of the charges and never objected to the indictment at any time during the proceedings because of their sufficient understanding of the charges. Thus, the Court holds that Claim Two has no merit because Coleman has not demonstrated that the state court decision was contrary to or involved an unreasonable application of his due process rights. The Court denies federal habeas relief on the merits based upon the state court record. *See* 28 U.S.C. §2254(e)(2).

### D.  Claim Three

At trial, Coleman's counsel made a motion in limine, asking the trial court not to admit evidence that Prince's handgun had been stolen and that Prince knew Coleman. (ECF No. 10-2 23) However, at trial, the court decided to admit such testimonial evidence. Prince was asked if he knew Coleman, the defense objected, and the Court allowed the state to adduce from Prince that he knew Coleman. (ECF No. 10-2 at 414-16) on Appeal, the Missouri Court of Appeals summarized this interaction:

> At trial, Prince testified that he owned the gun that was found at the scene. Prince testified that he kept the gun in the trunk of his car, and that the gun had been stolen when the trunk's lock had been punched open the same day as the attack on C.F. Prince had reported the theft. Immediately after this testimony, the State asked, "And do you know someone named Duckie[?]"[5] Defense counsel objected to this question, arguing, "there has been no evidence or testimony that [Prince] ever saw [Coleman] with his gun, never saw him handle his gun. So I feel that this testimony is irrelevant and prejudicial." The State countered, "It's circumstantial evidence that the night that he knows the defendant—that the gun that was used in the commission of a crime was stolen from somebody who knows the defendant. I think it's relevant circumstantial evidence." Skeptical of the State's rationale, the trial

---

[5] Coleman's nickname was "Duckie."

court stated, "I'm not sure how logically relevant it is. I'm going to allow you to ask him if he knows the defendant, and that's going to be it." Prince proceeded to testify that he knew Coleman personally.

(ECF No. 10-5 at 4) Ultimately, the Missouri Court of Appeals found that, even if Prince's testimony should not have been admitted, Coleman was not prejudiced by it. (ECF No. 10-5 at 5-8) The Court of Appeals stated, "[e]ven assuming, arguendo, that the trial court erred in admitting the evidence, we are not persuaded that Coleman suffered any outcome-determinative prejudice from Prince's testimony, i.e., that there is a reasonable probability the jury would have acquitted Coleman but for Prince's testimony." (ECF No. 10-5 at 6) The Court of Appeals emphasized that C.F.'s identification of Coleman as one of the perpetrators was strongly based upon her prior knowledge of Coleman and because she was in a room with him for three hours on the night of the crime, with "ample time to observe the masked man's speech and behavior." (ECF No. 10-5 at 7) Conversely, the Missouri Court of Appeals noted that Coleman's alibi evidence was weak based upon conflicting testimony by himself and his girlfriend's family. Coleman claimed that he was with his girlfriend and her family when the crime occurred and it was just a normal day. However, his girlfriend and her mother testified that day was actually the girlfriend's birthday, not just an ordinary day. (ECF No. 10-5 at 7) Likewise, Carter, Coleman's co-conspirator, presented inconsistent testimony at his own plea hearing and during Coleman's trial regarding whether Coleman participated in the crime. Nevertheless, Carter admitted, under oath at his plea hearing, that Coleman committed the home invasion crimes with him.

In Claim Three, Coleman asserts he was denied his right to be tried only for the offenses charged and due process of the law, under the Fourteenth Amendment to the United States Constitution when the trial court admitted Prince's testimony that the handgun recovered from

behind the complaining witness's residence had been stolen from his car trunk several hours before the robbery. (ECF No. 27 at 18)

Generally, admissibility of evidence is a state law issue and not proper for federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted) ("federal habeas corpus relief does not lie for errors of state law."). However, Coleman argues that federal habeas relief is not prohibited where the "state court's error in interpreting or applying its own law has rendered the trial that convicted the defendant so fundamentally unfair as to have deprived the defendant of substantive due process in violation of the constitution. (ECF No. 27 at 19 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Coleman maintains that allowing Prince to testify had low probative value and was also highly prejudicial because it implied that Coleman stole Prince's gun. (ECF No. 27 at 19)

The Court presumes that the state court's factual determination that allowing Prince to testify regarding his stolen gun and his relationship with Coleman was correct. *Nicklasson v. Roper*, 491 F.3d 830, 841 (8th Cir. 2007) (quoting *Purkett v. Elem,* 514 U.S. 765, 769 (1995) ("In federal habeas review, the factual findings of state courts … 'are presumed to be correct, and may be set aside, absent procedural error, ... only if they are not fairly supported by the record.'"); *see also* 28 U.S.C. § 2254(e). The Court finds that the Missouri Court of Appeals reasonably found that Prince's testimony did not have a substantial effect on the jury's determination, which was supported by the evidence. Indeed, Missouri Court of Appeals' ruling that the outcome of Coleman's trial was determined more significantly by C.F.'s persuasive identification of Coleman and Coleman's conflicted alibi testimony is entitled to deference by this Court as Coleman has not shown to be fundamentally unfair. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("A state court's determination that a claim

19

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). Thus, the Court holds that the Missouri Court of Appeals did not unreasonably apply federal law nor was the decision of the Missouri Court of Appeals unreasonable in light of the evidence. Claim Three fails to show and unreasonable application of federal law or of the facts to state law.

Additionally, even if Coleman's claim that the state evidentiary ruling was in error, the Court "must emphasize that not every trial error amounts to a constitutional deprivation." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). The Court "will reverse a state court evidentiary ruling only if the 'petitioner ... show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Anderson*, 44 F.3d at 679 (*Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987)(citations omitted)). Coleman has not shown how allowing questioning regarding Prince's acquaintance with Coleman or the stealing of Prince's gun  would have impacted the outcome of his trial, particularly given the significant evidence supporting Coleman's guilt. For this reason as well, the Court finds no unreasonable interpretation of federal law, no unreasonable application of facts to state law, and, therefore, no basis for federal habeas relief as to Claim Three.

## IV.   Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application

of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Donald Coleman's petition for a writ of habeas corpus under 28 U.S.C. § 2254 by a person in state custody (ECF No. 1) and Amended Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus (ECF No. 27) are **DENIED.**

**IT IS FURTHER ORDERED** that Terri Vandergriff is substituted as the Respondent in this action pursuant to Fed. R. Civ. P. 25(d).

**IT IS FINALLY ORDERED** that Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate Judgment of Dismissal in accord with this Order is entered on this same date.

Dated this 28th day of January, 2025.

_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE